UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERRY GENE WILLARD, JR.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>　　　　Defendant. | No. 1:20-cv-00122-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT COMMISSIONER OF SOCIAL SECURITY**<br><br>**(Doc. 20)** |

**I.      Introduction**

Plaintiff Perry Gene Willard ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1] *See* Docs. 19, 20, 21. After reviewing the record the Court finds that substantial evidence and applicable law do not support the ALJ's decision. Plaintiff's appeal is therefore granted.

**II.     Procedural Background**

On June 15, 2016 Plaintiff filed an application for disability insurance benefits alleging disability commencing September 1, 2015. AR 182–83. The Commissioner denied the application initially on September 8, 2016 and on reconsideration on December 9, 2016. AR 107–11; 115–20. Plaintiff requested a hearing which was held before an Administrative Law Judge (the "ALJ") on November 7, 2018. AR 40–73. Plaintiff was represented by an attorney at the hearing. AR 40. On January 30, 2019 the ALJ issued a decision denying Plaintiff's application. AR 23–34. The Appeals Council denied review on November 25, 2019. AR 3–9. On January 23, 2020 Plaintiff

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 7 and 8.

1

filed a complaint in this Court. Doc. 1.

## III. Factual Background

### A. Plaintiff's Testimony

Plaintiff lived with his wife, adult son, adult daughter and granddaughter in a house with no steps. AR 45, 50–52. He did not have a driver's license. AR 45. His highest level of education was the eleventh grade. AR 46. At his last full-time job he worked as a crane operator for four years until he was injured in an accident. AR 46. Prior to that he was a truck driver for six years and a water tank builder for eight years. AR 46–47. He took about 14 medications which his wife managed for him. AR 47. He could take care of his personal hygiene most days, but some days were harder than others. AR 48. He had bad days weekly during which he required assistance from his wife. AR 48. He used a back brace and cane for nine months following his back surgery but required no assistive devices thereafter. AR 48.

He did not consume drugs or alcohol. AR 49. The last alcoholic beverage he consumed was three years prior. AR 49. He performed limited household chores including laundry and occasional vacuuming. AR 49. He did nothing beyond that because he could not use his right hand. AR 49. He had not been to a grocery store in three to four years. AR 49. He did nothing outdoors. AR 49. He had two dogs. AR 50. He did not own a smart phone or computer. AR 50. He could walk for 15 to 20 minutes before resting, stand for 10 to 15 minutes before sitting, and sit for 20 to 30 minutes before standing. AR 50. He could not pick up his 40-pound granddaughter. AR 50. Accordingly, he estimated that his weight lifting capacity was "less than 40 pounds." AR 50. He could not go up and down steps, nor had he tried to do so since his back surgery. AR 50. He felt as though he weighed 500 pounds and that his neck was going to be crushed. AR 51. His medication helped somewhat. AR 51.

His anxiety was so bad he did not feel like leaving the house. AR 51. He did not socialize with anyone but his family. AR 51. On a typical day he had some coffee, watched the news, fed the dogs, took his medication, tried to relax and relieve his pain. AR 53. His April 2017 back surgery was not successful in his opinion. AR 53. It helped with his low back pain but his left foot was numb all the time. AR 53–54. Occasionally he felt electric shock pain traveling down his left

leg. AR 54. He underwent physical therapy for his low back. AR 54. He also received epidurals which helped his back but not his neck. AR 54. The numbness in his left foot affected his ability to stand and walk, and increased when he sat. AR 54. He had to lie down 30 minutes to an hour twice daily for pain relief. AR 55.

His neck pain was 15 times worse than his back pain. AR 56. His pain medication helped somewhat. AR 56. His pain level with medication was a 7 or 8 out of 10. AR 56. It got worse with activity. AR 57. Occasionally he felt good enough to walk around the back yard and pick up dog poop, but would subsequently end up in bed for two days with pain. AR 57. He felt as though there was a heavy weight on his neck. AR 58. He felt that way since before his surgery, perhaps dating back to his accident. AR 58. His medication made him drowsy, off balance and lightheaded 3 to 4 hours a day. AR 58. He had also been experiencing bad headaches for 9 to 10 months due to pinched nerves in his neck. AR 59. It was hard for him to carry a gallon of milk. AR 59. He could not really lift over ten pounds. AR 61. He did not want to be around people because of his anxiety. AR 60. He cried a lot. AR 60. He was on several medications for his anxiety. AR 62.

### B. <u>Vocational Expert</u>

After clarifying that the majority of his work in crane operation actually involved pump repair, the VE classified Plaintiff's prior jobs as a pump repairer and tank setter at the medium exertional level as generally performed and at the heavy exertional level as Plaintiff performed them. AR 68. The VE classified Plaintiff's past work as a tractor-trailer truck driver at the medium exertional level. AR 68.

The ALJ posed a hypothetical to the VE regarding an individual with Plaintiff's vocational profile who could perform work at the light exertional level with some postural limitations, occasional reaching above the shoulder and head with the right arm, frequent bilateral handling and fingering, some environmental limitations, a limitation to simple routine tasks, frequent interaction with supervisors and only occasional interaction with co-workers and the general public. AR 69–70. The VE testified that such an individual could not perform any of Plaintiff's past work. AR 70. The VE testified that such an individual could perform other jobs existing in significant numbers in the national economy, namely: cleaner, electronics worker and cafeteria attendant. AR

70. If the exertional requirements were reduced from light to sedentary, other jobs would also be available, namely "assembly," "bonder, semi-conductor," and inspector. AR 70. If the individual would be off task 15 percent of the workday and miss more than two days of work per month, no work would be available. AR 70–71.

### C. <u>Medical Opinions and Administrative Findings</u>

Plaintiff's treating physician, Dr. Bichai, completed the first of his two medical source statements on July 18, 2016. AR 363–65. Dr. Bichai diagnosed disc degeneration. AR. 363. He noted normal range of motion. AR 363. He noted no joint swelling, warmth, tenderness or redness. AR 363. He noted paravertebral muscle spasms and tenderness, normal sensation, slow reflex, 2/5 muscle strength, no atrophy and no spondylosis. AR 363. He noted no motor function abnormalities, no limitations in reaching, handling, or fingering, and no upper extremity limitations affecting his ability to lift or carry with his free hand. AR 364. He noted poor response to treatment, fair prognosis, and that the anticipated symptom duration was "lifetime." AR 365.

On October 29, 2018 Dr. Bichai completed a medical source statement of ability to do work-related activities. AR 635–40. In the check-box form, he opined that Plaintiff could lift and carry 10 pounds occasionally and 20 pounds occasionally. AR 635. He identified no medical or clinical findings in support of his lifting/carrying assessment. AR 635. He opined that Plaintiff could sit for eight consecutive hours, stand for 10-15 consecutive minutes, and walk for 20 consecutive minutes. AR 636. He also opined that Plaintiff could sit, stand and walk for a total of one hour each in an eight-hour day.[2] AR 636. As to clinical findings supporting his sitting/standing/walking assessment, Dr. Bichai identified bipolar disorder, back pain, status post lumbar surgery, neck pain, anxiety, depression, cervical stenosis, spondylosis, fibromyalgia, metal plate on jaw area, status post left eye injury, and chronic left eye dilation. AR 636. He opined that Plaintiff could never reach overhead with his right (non-dominant) hand, frequently reach in other directions bilaterally, and occasionally perform manipulative activities bilaterally. AR 637. As to the clinical findings supporting his reaching and manipulation assessments, Dr. Bichai identified fibromyalgia. AR 637.

---

[2] Dr. Bichai's opinion thus contained conflicting information as to Plaintiff's ability to sit, in that he opined Plaintiff could sit eight consecutive hours but no more than one hour in an eight-hour day.

4

He opined that Plaintiff could occasionally perform some postural activities and never perform others due to his back pain and spondylosis. AR 638.

On August 16, 2016 Dr. Wagner performed a consultative physical examination. AR 381. Dr. Wagner opined that Plaintiff could stand and walk up to six hours in an eight-hour day, sit without limitation, frequently lift 25 pounds, occasionally lift 50 pounds, and frequently reach above the shoulder. AR 385. Dr. Wagner also identified some postural and environmental limitations. AR 385. The ALJ accorded this opinion partial weight because it was internally inconsistent and insufficiently restrictive in light of Plaintiff's persistent symptoms. AR 31.

Non-examining state agency physicians L. Bobba and J. Bonner reviewed Plaintiff's medical file at the initial and reconsideration levels on September 8, 2016 and December 8, 2016, respectively. AR 74–85; 96–98. Both concluded that Plaintiff had no severe physical impairments, a conclusion to which the ALJ accorded little weight because the state agency physicians did not have access to Plaintiff's post-surgical records, among other reasons. AR 30.

### IV. **Standard of Review, Generally**

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks omitted).

If the evidence could reasonably support two conclusions, the court "may not substitute its

judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

### V. **The Disability Standard**

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy, given her RFC, age, education

and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

## VI. The ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of September 1, 2015. AR 25. At step two, the ALJ found that Plaintiff had the following severe impairments: anxiety and degenerative disc disease of the lumbar and cervical spine with radiculopathy. AR 26. The ALJ found that Plaintiff's alcoholism, right eye injury (pupil paralysis) and fibromyalgia were non-severe. AR 26. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 26. Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) with some postural limitations, occasional reaching above the shoulder and head with the right arm, frequent handling and fingering bilaterally, some environmental restrictions, a limitation to simple routine tasks, frequent interaction with supervisors, and occasional interaction with co-workers and the general public. AR 28–32. At step four, considering Plaintiff's RFC, the ALJ found that Plaintiff could not perform his past relevant work as a pump repairer, tank setter or tractor-trailer truck driver. AR 33. At step five, the ALJ found that Plaintiff could perform other jobs existing in significant numbers in the national economy, namely: cleaner, electronics worker and cafeteria attendant. AR 34. Accordingly, the ALJ found that Plaintiff had not been under a disability since his alleged disability onset date of September 1, 2015. AR 34.

## VII. Issues Presented

Plaintiff argues the ALJ did not give specific and legitimate reasons for rejecting Dr. Bichai's opinion, or clear and convincing reasons for rejecting his symptomology.[3]

### A. Dr. Bichai's Opinion

#### 1. Applicable Law

---

[3] For the reasons stated below, the Court finds that the ALJ did not appropriately consider or discuss Dr. Bichai's opinion. Because remand is therefore appropriate in any event, the Court declines to address Plaintiff's second argument regarding the ALJ's rejection of his symptomology.

7

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity. *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins*, 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

For applications filed before March 27, 2017, the regulations provide that more weight is generally given to the opinion of treating physicians, which are given controlling weight when well supported by clinical evidence and not inconsistent with other substantial evidence. 20 C.F.R. §

404.1527(c)(2); *see also Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996) (noting that the opinions of treating physicians, examining physicians, and non-examining physicians are entitled to varying weight in residual functional capacity determinations). An ALJ may reject an uncontradicted opinion of a treating or examining physician only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining physician may be rejected for "specific and legitimate" reasons. *Id.* at 830. In either case, the opinions of a treating or examining physician are "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). Regardless of source, all medical opinions that are not given controlling weight are evaluated using the following factors: examining relationship, treatment relationship, supportability, consistency, and specialization. 20 C.F.R. § 404.1527(c). The opinion of a non-examining physician (such as a state agency physician) may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

### 2. **Analysis**

Plaintiff takes issue with the ALJ's rejection of several limitations identified by Dr. Bichai, including that Plaintiff could: 1) lift and carry 10 pounds occasionally and 20 pounds occasionally; 2) stand and walk no more than 20 minutes consecutively and one hour each in an eight hour day; 3) never reach above shoulder with the right arm; and 4) perform only occasional fingering and handling bilaterally. In each of these respects, Dr. Bichai's opinion was contradicted by the opinions of the two non-examining state agency physicians who concluded that Plaintiff had no severe physical impairments (AR 74–85; 96–98), and by the opinion of the consultative examining physician who opined that Plaintiff could perform a range of medium work (AR 381–85). The ALJ was required therefore to provide specific and legitimate reasons for rejecting Dr. Bichai's

9

contradicted opinion. *Lester*, 81 F.3d at 830.

The ALJ provided the following discussion of Dr. Bichai's opinions:

> In July 2016, William Bichai, MD, completed a medical source statement of the claimant. Dr. Bichai diagnosed the claimant with disc degeneration and concluded she [sic] had 2/5 active movement of the body part with gravity eliminated. There was no atrophy and no cervical spondylosis. She did not need an assistive device for standing or walking. Her response to treatment was poor and her prognosis was fair. In October 2018, Dr. Bichai completed another medical source statement regarding the claimant's physical ability to do work-related activities. He opined the claimant could lift and/or carry 50 pounds occasionally and 25 pounds frequently. He could stand and/or walk for 1 hour and sit for 1 hour in an 8-hour workday. He could never reach overhead with the right hand, frequently reach overhead with the left hand, and frequently reach in all other directions with both hands. He could occasionally handle, finger, feel, and push and pull. He could frequently operate food [sic] controls. He could never climb ladders or scaffolds, stoop, kneel or crouch. He could occasionally climb stairs and ramps, balance, and crawl. The claimant's impairments affect his hearing or vision and should avoid ordinary hazards such as boxes on the floor, doors ajar or approaching vehicles or people. He could never work at unprotected heights, moving mechanical parts, or operate a motor vehicle. He could occasionally be exposed to humidity and wetness, dusts, odors, fumes, pulmonary irritants, extreme cold, extreme heat, and vibrations. He should work at quiet conditions. (19F) Partial weight is given to these opinions as Dr. Bichai had the opportunity to examine the claimant in person. The undersigned finds it insufficiently restrictive in part, in light of the claimant's persistent symptoms, as reported, even after his back surgery.

AR 31. Plaintiff contends that the ALJ's explanation fell short of the required specific and legitimate reasoning for rejecting a treating source opinion.

### a. **Weight Lifting/Carrying**

First, the ALJ incorrectly stated that Dr. Bichai opined that Plaintiff could lift and carry weight at the medium exertional level (25 pounds frequently and 50 occasionally), when in fact Dr. Bichai opined that Plaintiff could lift and carry 10 pounds occasionally and 20 pounds occasionally.[4] AR 31. Defendant contends this "is not error because the ALJ did not adopt these

---

[4] Per 20 C.F.R. § 404.1567(b), "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). Thus, Dr. Bichai's opinion that Plaintiff could lift 10 pounds occasionally and 20 pounds occasionally fell somewhere in between sedentary work and light work. It was less restrictive than sedentary work (which involves never lifting more than 10 pounds), but was more restrictive than light work (which involves frequently lifting 10 pounds).

limitations in his RFC finding." Resp. at 16–17. Indeed, the ALJ did not conclude that Plaintiff could perform medium exertional lifting. However, he did conclude that Plaintiff could perform light exertional lifting, which is not as restrictive as Dr. Bichai's opinion (which fell somewhere between sedentary exertional lifting and light exertional lifting). Thus, the ALJ incorrectly believed that his own RFC was more restrictive than Dr. Bichai's opinion concerning weight lifting. Accordingly, it appears the ALJ saw no reason for explaining his departure from Dr. Bichai's opinion, a departure which he incorrectly believed was in the claimant's interest. In that respect, the ALJ erred.[5]

However, the ALJ did pose a second hypothetical to the VE asking what jobs would be available for an individual with Plaintiff's vocational profile if the exertional requirements were reduced from light work to sedentary work. AR 70. The VE testified that jobs would still exist in sufficient numbers in the national economy at the sedentary exertional level which an individual with Plaintiff's vocational profile could perform, namely assembler, semi-conductor and inspector. AR 70. Thus, even if the ALJ adopted Dr. Bichai's identified weight lifting limitations, the step five analysis would still have yielded a finding of non-disability. The ALJ's error was therefore harmless. "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

---

[5] One additional clarification is in order regarding Defendant's assertion that Plaintiff "said he could lift and carry up to 40 pounds." Resp. at 9. He testified that he could not pick up his granddaughter who weighs 40 pounds. AR 50. Accordingly, he estimated his weight lifting capacity to be "less than 40 pounds." AR 50. Plaintiff did not initially specify where on the spectrum from 0 to 39 pounds his weight lifting capacity fell, nor did the ALJ seek clarification on that point. Plaintiff's attorney subsequently sought such clarification from Plaintiff, who testified that it's hard for him to carry a gallon of milk and that he couldn't lift 10 pounds. AR 59, 61 ("Q: You mentioned you can't pick up your granddaughter. You can't even lift 40 pounds. A: Right. Q: So, it's not like you can lift 35, but you're saying you can't even lift ten pounds, is that accurate? A: Right."). Plaintiff did not say he could lift upwards of 40 pounds.

11

### b. **Standing/Walking; Reaching; Manipulation**

Before addressing the sufficiency of the ALJ's analysis as to these three limitations, some further clarification is warranted regarding the distinctions between the ALJ's RFC and Dr. Bichai's opinion (some of which are subtle), and the extent to which the ALJ's hypothetical to the VE accounted for those limitations.

The ALJ departed from Dr. Bichai's opinion as to standing and walking, concluding Plaintiff could perform both for six hours out of eight, whereas Dr. Bichai opined that Plaintiff could stand and walk for no more than one-hour each in an eight-hour day, and no more than 10 to 20 minutes consecutively. The ALJ did pose a second alternative hypothetical to the VE reducing the exertional requirements to sedentary work.[6] Somewhat confusingly, however, after posing a hypothetical reduction to sedentary exertional work, the ALJ then articulated the corresponding standing and waking requirement as "a maximum of four hours." In fact, sedentary work generally limits standing and walking to about two hours in an eight-hour day, not four hours.[7] Moreover, the ALJ's hypotheticals did not include Dr. Bichai's identified limitations regarding Plaintiff's maximum consecutive standing and walking ability of 10 to 20 minutes each. Thus, the ALJ rejected Dr. Bichai's opinion as to Plaintiff's standing and walking limitations, and the ALJ's hypothetical to the VE did not account for those limitations.

The ALJ also departed from Dr. Bichai's opinion as to reaching. Interestingly, the reaching limitations incorporated in the ALJ's RFC were more restrictive than Dr. Bichai's opinion in some respects but less restrictive in others. The ALJ found that Plaintiff could occasionally perform

---

[6] *See* AR 70 ("For the second hypothetical, I'm going to reduce the exertional requirements from light down to sedentary and make the standing and walking a maximum of four hours and lifting and carrying ten pounds or less. Are there any jobs at the sedentary level that would meet that hypothetical and, if so, could you give me some examples?").

[7] *See* 20 C.F.R. § 404.1567 ("Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."); SSR 83-10 ("'Occasionally' means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday.").

12

above shoulder and overhead reaching with the right arm and unlimited reaching with the left arm (AR 31), whereas Dr. Bichai opined that Plaintiff could never reach overhead with his right arm, frequently reach overhead with his left arm, and frequently reach in all other directions bilaterally. AR 637.  Thus, the ALJ partially rejected Dr. Bichai's opinion as to Plaintiff's reaching limitations and did not account for those limitations in his hypothetical to the VE.

Finally, the ALJ departed from Dr. Bichai's opinion as to manipulative activities (including handling and fingering), finding that Plaintiff could perform those manipulative activities frequently with both hands, whereas Dr. Bichai opined that Plaintiff could perform those manipulative activities only occasionally with both hands.  Plaintiff notes that the DOT's descriptions of the VE's identified jobs suggests that they may require more than occasional fingering and handling.  Br. at 18 (DICOT 323.687-014, 726.687-010, 311.677-010).  Plaintiff's observation is consistent with SSR 83-10, which states that "[m]ost unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions."  Thus, the ALJ partially rejected Dr. Bichai's opinion as to Plaintiff's manipulative limitations, and those limitations were not captured by her second hypothetical to the VE reducing the exertional requirements to the sedentary level.

Turning back to the ALJ's analysis, the parties agree that the ALJ at least accurately recited the content of Dr. Bichai's opinion as to standing/walking, reaching and manipulation (in contrast to his inaccurate recitation of Dr. Bichai's opinion as to weight lifting).  However, the ALJ's explanation for departing from Dr. Bichai's opinion fell short in that it only stated that Dr. Bichai's opinion was *insufficiently* restrictive in some respects.  AR 31 ("Partial weight is given to these opinions as Dr. Bichai had the opportunity to examine the claimant in person.  The undersigned finds it insufficiently restrictive in part, in light of the claimant's persistent symptoms, as reported, even after his back surgery.").  It is not clear from this explanation whether the ALJ fully

13

appreciated in which respects Dr. Bichai's opinion was *more* restrictive than the ALJ's ultimate RFC. Nor is it clear whether the ALJ intended to reject Dr. Bichai's opinion in those respects. The ALJ's analysis fell short of the specific and legitimate reasoning standard required for rejecting a treating source opinion. Moreover, unlike the sedentary weight lifting limitation discussed above, the ALJ's alternative hypotheticals posed to the VE did not include Dr. Bichai's identified limitations regarding standing/walking, reaching and manipulation. Accordingly, there is no basis to find harmless error.

Defendant, for his part, offers a thorough defense of the ALJ's rejection of Dr. Bichai's opinion. Defendant's analysis, however, is not persuasive because it is ungrounded in the ALJ's decision. *See Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) (noting that courts must "review the ALJ's decision based on the reasoning and factual findings offered by the ALJ — not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.").

First, Defendant contends that the "the ALJ reasonably found that Dr. Bichai's opinion was inconsistent with the objective medical evidence (Tr. 30–31)." Resp. at 14. This statement is absent from the ALJ's opinion.

Second, Defendant contends that "the ALJ appropriately assigned partial weight to Dr. Bichai's opinion because he did not provide objective clinical and diagnostic evidence to support his overly restrictive opinion." Resp. at 14. The ALJ identified that as a reason for rejecting a different opinion (an "unsigned and undated medical source statement regarding the claimant's mental status"). AR 32 (citing Ex. 7F). He did not identify that as a reason for rejecting Dr. Bichai's opinion.

Third, Defendant contends that "the ALJ properly cited Plaintiff's treatment history to discount Dr. Bichai's conclusions about Plaintiff's allegedly disabling limitations (Tr. 29–30)."

Resp. at 15. The ALJ did indeed cite Plaintiff's treatment history but made no connection between that treatment history and Dr. Bichai's opinion. Moreover, the ALJ did not demonstrate an intention to reject the allegedly disabling limitations in Dr. Bichai's opinion. The ALJ expressed no opinion on that portion of Dr. Bichai's opinion. Rather, as discussed above, the ALJ only addressed the fact that Dr. Bichai's opinion was insufficiently restrictive in part. AR 31.

Additionally, Defendant argues that "Dr. Bichai contradicted himself in an earlier opinion when he opined that Plaintiff did not have any limitations in reaching, handling, or fingering." Resp. at 17. Defendant acknowledges that these opinions were two years apart and Plaintiff underwent surgery in the interim. Nevertheless, Defendant contends that the evidence does not support the notion that Plaintiff's condition worsened after his surgery. Defendant therefore believes that Dr. Bichai's second opinion is entitled to comparatively less weight.

Notably, the ALJ did not observe any contradiction between Dr. Bichai's opinions. The ALJ addressed the merits of both opinions in one paragraph with one explanation. Moreover, the ALJ did not discount the importance of post-surgical evidence as Defendant does. Rather, the ALJ underscored Plaintiff's persistent post-surgical symptoms as a basis for rejecting Dr. Bichai's treating source opinions and Dr. Wagner's consultative opinion as insufficiently restrictive. *See* AR 31. The ALJ also accorded little weight to the non-examining opinions because they did not have access to Plaintiff's post-surgical records. AR 30. Based on the ALJ's internal logic, post-surgical opinion evidence is entitled to at least as much weight as pre-surgical opinion evidence, if not more weight. Simply put, the Defendant's theory of the case (though not necessarily invalid) is fundamentally different than the ALJ's. Accordingly, the Court cannot affirm the ALJ's decision on any of the Defendant's articulated bases.

### VIII. Conclusion and Remand for Further Proceedings

In summation, the ALJ discounted Dr. Bichai's opinion solely because it was "insufficiently

15

restrictive in part." AR 31. The ALJ did not indicate what he thought of the other portions of Dr. Bichai's opinion, namely the limitations identified by Dr. Bichai that were more restrictive than the ALJ's ultimate RFC. Remand is therefore appropriate for the ALJ to determine whether to accept or reject Dr. Bichai's identified limitations and, if necessary, to obtain additional VE testimony on the impact of any additional limitations on Plaintiff's occupational base. *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Generally when a court . . . reverses an administrative determination, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

## IX. Order

For the reasons stated above, the Court finds that substantial evidence and applicable law do not support the ALJ's conclusion that Plaintiff was not disabled. Accordingly, Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is granted. The Clerk of Court is directed to enter judgment in favor of Plaintiff Perry Willard and against Defendant Andrew Saul, Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **May 23, 2021**  /s/ Gary S. Austin
UNITED STATES MAGISTRATE JUDGE